IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA M. C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 7794 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Tina M. C. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff protectively filed for DIB on September 26, 2015, alleging disability since May 10, 2015 due to: a large bone spur in the heel that went through the Achilles tendon; a shredded Achilles tendon; and an anchor in the foot. (R. 204, 261). Born in 1968, Plaintiff was 46 years old as of the alleged disability onset date making her a younger

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

person (under age 50).  20 C.F.R. § 404.1563(c).  She graduated from high school and lives in a house with her husband, three children, and two grandchildren.  (R. 262, 731).  Plaintiff spent more than eight years working as a supervisor in the entertainment industry from January 2004 to October 2012, then took a job doing security at a concert venue in May 2014.  (R. 262).  Though she left that position on May 15, 2015 due to her conditions, she continued to work part-time after that date, receiving payment from the State of Illinois to provide childcare for her two grandchildren, and also serving in an accommodated position as a dispatcher for the concert venue.  (R. 729-30).  None of that employment constituted substantial gainful activity.  (R. 702).

The Social Security Administration denied Plaintiff's application at all levels of review.  She appealed to the district court and the parties agreed the case should be remanded to the Commissioner for further proceedings.  (R. 806).  On June 13, 2020, the Appeals Council vacated the final decision of the Commissioner and remanded the case to administrative law judge Patricia Witkowski Supergan (the "ALJ") with instructions to: review and address additional evidence submitted to the Appeals Council; re-evaluate the medical opinion evidence pursuant to 20 C.F.R. § 404.1527 and explain the weight given to each opinion; reassess Plaintiff's maximum residual functional capacity ("RFC"); and obtain supplemental evidence from a vocational expert.  (R. 812-14).  The Appeals Council noted that Plaintiff had filed a subsequent application for benefits on February 2, 2019 and had been found disabled as of December 2, 2018.[2]  If the ALJ did not find it appropriate to reopen that decision, her review would be limited to the period prior to December 2, 2018.  (R. 813).

---

[2] Plaintiff turned 50 on December 3, 2018 and became presumptively disabled at that time under Medical Vocational Rule 201.14.  (R. 816-47).

2

The ALJ held a supplemental hearing on August 13, 2020 and heard testimony from Plaintiff, who was represented by counsel, from medical expert Gilberto Munoz, M.D. (the "ME"), and from vocational expert Theresa Gibson (the "VE"). (R. 719-63). On September 3, 2020, the ALJ determined that there was no basis for reopening the decision as to Plaintiff's February 2019 application and so considered whether she was disabled from May 10, 2015 to December 2, 2018. (R. 702). The ALJ found that Plaintiff's ankle pain with history of left Achilles tendon tear, tendinopathy, bilateral carpal tunnel syndrome, tarsal tunnel syndrome with tendinitis requiring surgery, and back pain with lumbar degenerative disc disease are all severe impairments, but that during the relevant period they did not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 702). After reviewing the medical and testimonial evidence, the ALJ concluded that from May 15, 2015 to December 2, 2018, Plaintiff had the RFC to perform sedentary work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent reaching in all directions including overhead with both upper extremities; frequent handling, fingering, and feeling with both upper extremities; and occasional exposure to and work around vibration and hazards such as moving machinery or unprotected heights. (R. 702-07).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could not perform Plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy, such as telephone clerk, charge account clerk, and order clerk. The ALJ thus found Plaintiff not disabled at any time from May 10, 2015 to December 2, 2018. (R. 708-09). That decision stands as the final

3

decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); *Payne v. Colvin*, 216 F. Supp. 3d 876, 880 (N.D. Ill. 2016).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to properly evaluate the opinion from her treating orthopedic surgeon, Paul F. DeFrino, M.D.; (2) omitted important restrictions from the RFC; and (3) erred in evaluating her subjective statements regarding the limiting effects of her symptoms. As discussed below, this Court finds that the ALJ did not commit reversible error and her decision is supported by substantial evidence.

## **DISCUSSION**

### **A.     Standard of Review**

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act (the "SSA"). *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB under the SSA, a claimant must establish that she is disabled within the meaning of the Act. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A person is disabled if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F.Supp.2d 618, 630 (N.D. Ill. 2009). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing "whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to

perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

**C.     Analysis**

    **1.     Dr. DeFrino's Opinion**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in giving little weight to the opinion from her treating orthopedic surgeon Dr. Paul DeFrino. For claims like Plaintiff's that were filed before March 2017, a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). An ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

The opinion at issue consists of a March 2, 2017 letter from Dr. DeFrino which states, in its entirety: "Patient had surgery on July 20, 2016 and has been under my care, she has not been able to return to work." (R. 559). The ALJ gave this opinion little weight

6

because it "is not supported by the overall record, lacks functional limitations, and addresses an issue reserved to the Commissioner." (R. 707). Plaintiff objects that in reaching this conclusion, the ALJ failed to address the factors set forth in 20 C.F.R. §404.1527(c), namely, Dr. DeFrino's status as a treating orthopedic specialist who saw Plaintiff seven times before issuing his opinion and was familiar with her course of care. (Doc. 14, at 4-5; Doc. 21, at 2-4). "As a general rule, an 'ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to [treating physicians'] opinions.'" *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (quoting *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)). At the same time, "if the reviewing court is 'convinced that the ALJ would reach the same result on remand,' then an ALJ's failure to address each of the Section 404.1527(c)(2) factors 'is harmless and a remand is not required.'" *Stacy W. v. Kijakazi*, No. 19 C 5988, 2022 WL 991966, at *8 (N.D. Ill. Apr. 1, 2022) (quoting *Karr*, 989 F.3d at 513).

Here, the ALJ's discussion of Dr. DeFrino's treatment notes throughout the decision suggests she was aware that he was an orthopedic surgeon who operated on Plaintiff in July 2016, that he subsequently referred her for physical therapy, and that he examined her multiple times before and after he rendered his opinion. (R. 704-06). Even assuming this recitation is insufficient to satisfy 20 C.F.R. §404.1527(c), the ALJ's determination that Dr. DeFrino's opinion conflicts with the overall record is still supported by substantial evidence, making any error harmless. Plaintiff made her first complaint of left foot and ankle pain around July 2015, approximately a year before she started treating with Dr. DeFrino in June 2016. On July 15, 2015, Plaintiff saw Julia E. Shauger, DPM for evaluation of a lump on the back of her Achilles that caused constant pain, especially with

7

activity. Dr. Shauger assessed posterior calcaneal spur with bursitis, low grade Achilles tendonitis, Achilles tendinopathy, and plantar fasciitis. (R. 347).

On August 18, 2015, Dr. Shauger performed a left Achilles tendon repair and excision of bone spur with insertion of a bone anchor (R. 332, 703), but Plaintiff continued to experience moderate to severe pain in the left foot that kept her awake at night. She also exhibited decreased range of motion and tenderness in the left ankle and walked with a moderate limp. (R. 350-53, 355-56, 703-04). To address these problems, Dr. Shauger performed a nerve decompression and scar repair on December 16, 2015. (R. 390, 704). By May 2016, Plaintiff was still experiencing pain and swelling, limited range of motion, hypersensitivity, problems sleeping, an antalgic gait, and muscle cramping. (R. 403-05, 704). Dr. Shauger referred Plaintiff to an orthopedic surgeon and she ultimately made her way to Dr. DeFrino, a foot and ankle specialist.

At Plaintiff's first visit on June 14, 2016, Dr. DeFrino observed increased sensitivity to a branch of the sural nerve, a mildly positive Tinel's sign, and significant Achilles pain and soreness. (R. 551). He assessed sural neuritis and insertional Achilles tendonitis, and recommended surgical intervention. (R. 551-52, 704). On July 20, 2016, Dr. DeFrino performed a left Strayer gastrocnemius lengthening, left calcaneal exostectomy, left Achilles tendon repair, and left flexor hallucis longus ("FHL") tendon transfer to the calcaneus. (R. 427, 704). After the surgery, Plaintiff had physical therapy ("PT") to address continued symptoms, including pain, swelling, decreased range of motion, and decreased strength in the left ankle. (R. 445, 569, 571, 704). At appointments with Dr. DeFrino in November and December 2016, Plaintiff still had soreness and pain along the

8

heel but it was much better with less swelling, less inflammation, and less tenderness. (R. 556, 557).

Plaintiff continued to report pain at the incision site on January 17, 2017, and newly complained of occasional numbness in the plantar aspect of the foot. But her plantar fascial symptoms had improved and there was less tenderness. (R. 558). Dr. DeFrino encouraged home stretching, exercise, strengthening, and flexibility. (*Id.*). Shortly thereafter, on March 2, 2017, Dr. DeFrino submitted his letter stating Plaintiff had been unable to return to work. By May 2017, Plaintiff's surgical scar was completely healed but Dr. Defrino observed some fullness around the ankle and tenderness at the Achilles. PT notes that month indicated that Plaintiff had achieved improvement in left ankle range of motion and was showing good response to manual treatment and exercises. (R. 544, 562, 704).

On May 9, 2017, Plaintiff saw interventional pain specialist Intesar Hussain, M.D. Her exam was largely normal with intact sensation, full motor strength, and normal reflexes. (R. 565-66). Dr. Hussain concluded that Plaintiff was suffering from a nerve issue and so sent her to a neurologist. (R. 566). On May 24, 2017, Nitin Nadkarni, M.D., documented a normal neurological exam with possible tarsal tunnel syndrome or lumbar radiculopathy. He ordered MRI tests and a nerve conduction study, and prescribed gabapentin for pain. (R. 659). The May 31, 2017 MRI of the left leg and foot showed intact and stable reconstruction with mild degenerative changes at the tibiotalar articulation. (R. 634, 704). A lumbar spine MRI taken the same day showed minimal disc bulge at L2-L3 and L4-L5. (R. 635, 704). The July 13, 2017 EMG test showed questionable tarsal tunnel syndrome. (R. 638, 704). In August 2017, Dr. DeFrino referred

9

Plaintiff to Gregory A. Dumanian, M.D., a plastic surgeon specializing in nerve grafting. (R. 666, 704). Dr. Dumanian administered a sural nerve block on September 19, 2017 and all of Plaintiff's pain resolved. (R. 671, 687, 704). Nevertheless, on November 30, 2017, he performed excision of the left sural nerve neuroma and reconstruction with nerve graft. (R. 692, 704).

Thereafter, Plaintiff did not receive further treatment for her left foot and ankle for nearly a year until October 1, 2018. During an appointment with Dr. DeFrino that day, Plaintiff presented with "a little retrocalcaneal bursitis" and "no real spur pain," and had intact pulses, normal sensation, and symmetrical reflexes. (R. 705, 1488). Dr. DeFrino assessed right midstance Achilles tendinosis with some mild insertional component and sent Plaintiff for more PT. (*Id.*). Plaintiff improved with the PT, exhibiting no major gait deviations as of November 30, 2018. (R. 705, 1489, 1520).

Plaintiff does not explain how Dr. DeFrino's March 2, 2017 letter stating she had been unable to return to work, without any further details, is consistent with evidence showing relatively normal imaging results in May 2017, full pain relief following an injection in September 2017, and no further ankle or foot treatment for nearly a year following a December 13, 2017 nerve graft. The ALJ's discussion of this evidence satisfies the requirement that she "minimally articulate" her reasoning for rejecting Dr. DeFrino's opinion. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). *See also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) ("[W]e read the ALJ's decision as a whole and with common sense.").

Further supporting the ALJ's decision is the undisputed fact that every other physician of record opined that from May 10, 2015 to December 2, 2018 and beyond,

10

Plaintiff had an RFC for at least sedentary work. In January and April 2016, State agency consultants James Hinchen, M.D., and Hemantha Surath, M.D., both found Plaintiff capable of a reduced range of light work. (R. 106-07, 117-19). And in June 2016, orthopedic surgeon James A. Krcik, M.D., found that Plaintiff had no functional restrictions. (R. 407-09). The ALJ gave all of these opinions some weight but assigned greater weight to the July 15, 2019 opinion from State agency consultant Frank Mikell, M.D., who found Plaintiff limited to a reduced range of sedentary work. (R. 707, 824-26, 841-44). The ALJ explained that Dr. Mikell's opinion was consistent with the impartial ME's hearing testimony that Plaintiff could perform sedentary work based on evidence that her surgery and recovery periods progressed as expected without overlap, she did not have structural or anatomical damage following the surgeries, and she did not use a walker for assistance with ambulation. (R. 705-06, 707, 750-52). In affording the ME's opinion great weight, the ALJ observed that it was supported by the preponderance of the objective medical and other evidence in the record, which she recounted in the decision. (R. 706). Notably, the RFC adopted by the ALJ mirrors the restrictions set forth by Dr. Mikell with some additional manipulative and environmental limitations to account for Plaintiff's testimony. (R. 702-03).

Plaintiff argues that the ALJ's decision still requires reversal because the two other reasons she gave for rejecting Dr. DeFrino's opinion – that it lacked a function-by-function analysis and addressed an issue reserved to the Commissioner – are invalid. (Doc. 14, at 7-8). The Court agrees that an ALJ cannot reject a treating physician's opinion solely because it lacks a function-by-function assessment, and that doing so would constitute error. *Byndum v. Berryhill*, No. 17 C 1452, 2017 WL 6759024, at *3 (N.D. Ill. Dec. 15,

11

2017) ("[T]he governing regulations do not require a treating physician to submit a function-by-function assessment of a patient as part of his opinion, and dismissing a treating physician's opinion for that reason is inappropriate."). As discussed, however, the ALJ also relied on the inconsistency between Dr. DeFrino's opinion and the overall record. In such circumstances, the ALJ's observation that Dr. DeFrino failed to provide a function-by-function assessment is not grounds for reversal. *Regina P. v. Saul*, No. 19 C 3155, 2020 WL 4349888, at *7 (N.D. Ill. July 29, 2020) ("[S]o long as the ALJ provides other supported reasons for discounting the opinion, the ALJ's reference to [a lack of a function-by-function assessment] does not amount to reversible error.").

For similar reasons, the case need not be remanded because the ALJ observed that Dr. DeFrino's assertion that Plaintiff "has not been able to return to work" is "an issue reserved to the Commissioner." (R. 548, 707). To begin, "[a]n ALJ may discount a doctor's opinion, where it is a conclusion reserved for a final disability determination." *Amy D. v. Kijakazi*, No. 21 C 1646, 2023 WL 2242005, at *8 (N.D. Ill. Feb. 27, 2023) (citing *Ray v. Saul*, 861 F. App'x 102, 106 (7th Cir. 2021)) (holding the treating physician's "conclusions reflected final determinations of disability rather than objective medical evaluations—and therefore were entitled to no weight."). Moreover, the ALJ did not simply ignore Dr. DeFrino's opinion on the grounds that it was an improper legal conclusion; she expressly considered it but found it inconsistent with objective medical evidence. And the opinion addressed Plaintiff's ability to return to work as of March 2, 2017 and did not speak to her functioning or ability to work going forward. In such circumstances, the ALJ reasonably determined that Dr. DeFrino's opinion was not probative evidence that Plaintiff was disabled through December 2, 2018.

12

The Supreme Court has made clear that "[s]ubstantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ could have provided a more fulsome analysis of Dr. DeFrino's one-sentence opinion, but any error the ALJ made was harmless as the decision as a whole demonstrates that she considered the relevant evidence and provided sufficient detail to enable the Court to trace her reasoning. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision.") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("It is proper to read the ALJ's decision as a whole.")). Plaintiff's request to remand the case for further consideration of Dr. DeFrino's opinion is denied.

### 2. RFC Determination

Plaintiff next argues that the ALJ's RFC determination fails to account for her need to elevate her leg and take naps during the day. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 404.1527(f)(2).

Plaintiff testified at the August 13, 2020 hearing that when she was at home during the relevant period from May 2015 to December 2, 2018, she elevated her left foot above her heart seven or eight times per day with ice, seven days per week. (R. 744-45). She usually kept the ice on for 15 to 20 minutes so that would be the minimum length of time

13

she would elevate her leg each session. (R. 745). Plaintiff also stated that she could only stand for three to four minutes before experiencing pain and swelling in her left foot. (R. 749). At the initial September 20, 2017 hearing, Plaintiff similarly testified that if she was unable to elevate her left foot for 10 minutes every hour, she could not walk on the foot at all and felt intense pain. (R. 86).

The ALJ expressly acknowledged Plaintiff's testimony about leg elevation but found that the claimed restriction was not supported by the record. (R. 706). In reaching this conclusion, the ALJ relied on the ME's testimony that there are two reasons a person would need to elevate her leg: (1) pronounced swelling in the ankle; and (2) venous insufficiency. (R. 706, 751, 752). The ME found no evidence of either condition sufficient to justify adding leg elevation to the RFC, and the ALJ gave that opinion great weight. (R. 706, 752). Plaintiff claims the ME's testimony was "more ambiguous" than the ALJ suggested because he also mentioned that Plaintiff "has pain and I cannot testify about her pain." (R. 752; Doc. 14, at 9). In Plaintiff's view, the record contains many reports of pain and the ALJ erred by failing to consider that she attempted to relieve that pain by frequently elevating her leg. (Doc. 14, at 9-10; Doc. 21, at 7-8). The Court disagrees that the ALJ committed reversible error on this point.

When it comes to a plaintiff's subjective statements, "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other

14

objective evidence." *Grotts*, 27 F.4th at 1278. As Plaintiff notes, following her December 16, 2015 surgery, she told Dr. Shauger on January 15 and February 12, 2016, that she was elevating her foot to help with swelling and pain. (R. 397-98, 403).

After that February 2016 appointment, however, there is no further mention of leg elevation in the medical record for more than three years until June 8, 2019, when Plaintiff told State agency examiner Titilaya C. Abiona, M.D., that her pain is constant but better when she elevates her foot. (R. 1905). Of course, this was more than six months after the period in question and no physician of record ever recommended that Plaintiff elevate her leg. This supports the ALJ's decision (bolstered by the uncontradicted ME opinion) that such a restriction did not belong in the RFC. That decision is in no way "patently wrong." *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) (ALJ permissibly discounted the plaintiff's testimony about elevating his legs where "there is no record evidence from [the plaintiff's] treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that [the plaintiff] reported."). *Cf. Jajuan N. v. Saul*, No. 19 C 7961, 2020 WL 5439983, at *2 (N.D. Ill. Sept. 10, 2020) (the Commissioner conceded that the ALJ erred in omitting leg elevation from the RFC where "plaintiff was repeatedly told to elevate his left foot.").

With respect to fatigue, Plaintiff testified at the August 2020 hearing that during the relevant period she had difficulty sleeping and did not get more than three hours of rest per night despite taking medication. As a result, she napped up to twice a day but still had no energy. (R. 747). Once again, the ALJ acknowledged this testimony but did not include a napping or resting restriction in the RFC. (R. 706). Plaintiff says this was error, citing records where she reported having difficulty sleeping from September 11, 2015

15

through September 13, 2016. (Doc. 14, at 11) (citing R. 351, 355, 403, 407, 411, 568). But Plaintiff did not complain of fatigue, difficulty sleeping, or needing to nap at any time after September 2016. Nor did any physician of record recommend that Plaintiff lie down or rest during the day. This is fatal to Plaintiff's assertion of error on this point. *See Conor B. v. Kijakazi*, No. 20 C 3342, 2022 WL 4079461, at *4 (N.D. Ill. Sept. 6, 2022) (ALJ did not err in rejecting the plaintiff's claimed need to lie down during the day where "this limitation was not corroborated by the medical evidence, nor did any doctor's opinion contained in the record . . . indicate a limitation in this area was warranted."). *Compare Monika B. v. Saul*, No. 20 C 638, 2020 WL 7626685, at *6 (N.D. Ill. Dec. 22, 2020) (ALJ did not properly assess the plaintiff's complaints of fatigue, a known symptom of multiple sclerosis, where they were documented in the medical records).

Viewing the record as a whole, the ALJ reasonably discounted Plaintiff's claimed need to elevate her leg and nap during the day, and did not err in excluding such restrictions from the RFC. Plaintiff's request to remand the case for further consideration of this issue is denied.

### 3. Subjective Symptom Evaluation

Plaintiff finally seeks remand based on the ALJ's assessment of her other subjective statements. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms.

16

20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th at 1278). As noted, "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy*, 759 F.3d at 816.

Plaintiff argues that the ALJ did not adequately consider her ongoing complaints of left foot and ankle pain, back pain, and hand pain that supported her testimony that she was not able to work from May 2015 to December 2018. (Doc. 14, at 13; Doc. 21, at 11-12). In making this argument, Plaintiff once again ignores evidence that her foot and ankle pain resolved entirely following a September 2017 injection, and that after she underwent a nerve graft in December 2017, she did not seek further treatment for nearly a year until October 2018. With respect to Plaintiff's back pain, the only available imaging is a May 31, 2017 MRI of the lumbar spine, which showed: minimal disc bulge at L4-L5 with minimal disc desiccation, minimal left lateral recess narrowing, mild left and minimal right foraminal narrowing, and moderate bilateral facet arthropathy; minimal disc bulge at L2-L3; and no disc herniation or central canal or foraminal narrowing at any other level. (R. 632, 635, 662-63, 704). Plaintiff fails to explain how this test demonstrates that she suffered from disabling back pain during the relevant three-year period.

That leaves Plaintiff's hand problems. She first complained of right thumb pain and locking on December 28, 2017. (R. 704-05, 1458). The next day, William J. Baylis, D.O., performed an A1 pulley release with traction tenolysis of the right thumb. (R. 705,

17

1472). Plaintiff was "doing great" after surgery but started having numbness and pain in her hands. (R. 705, 1460-62). A March 9, 2018 nerve conduction study showed mild sensory distribution carpal tunnel syndrome with no denervation or evidence of ulnar or radial neuropathy. (R. 705, 1478, 1511). Plaintiff had a right carpal tunnel release on May 7, 2018 and was doing well and able to engage in full activity as of June 22, 2018. (R. 705, 1465-67, 1474). She did not receive further hand treatment after that date.

Though the evidence reflects that Plaintiff's hand pain resolved as of June 2018, the ALJ nonetheless gave her the benefit of the doubt and incorporated some manipulative restrictions in the RFC, including frequent but not constant reaching in all directions, and frequent but not constant handling, fingering, and feeling. (R. 703). No physician imposed greater limitations. *Hosea M. v. Saul*, No. 18 C 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018)) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'"). On the record presented, the ALJ did not err in rejecting Plaintiff's complaints of disabling hand pain.

Also unavailing is Plaintiff's assertion that the ALJ failed to adequately assess her treatment history and activities of daily living. The ALJ discussed Plaintiff's four surgical procedures on her left ankle and foot between August 2015 and November 30, 2017, and her two hand surgeries between December 2017 and May 2018. (R. 703, 704, 705). It is true that "a claimant's election to undergo serious treatment, such as having surgery . . . , indicates that the claimant's complaints of pain are likely credible." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (citing *Carradine v. Barnhart*, 360 F.3d 751, 755

(7th Cir. 2004)). But as noted, Plaintiff did not pursue additional ankle or foot treatment or complain of related pain for almost a year after her last surgery, and the A1 pulley release and carpal tunnel release were both successful in resolving Plaintiff's hand pain. The ALJ's decision to discount Plaintiff's complaints of disabling pain was not patently wrong.

Finally, the ALJ discussed Plaintiff's daily activities, including her need for assistance with household chores, and her inability to do laundry or sit for more than 10 to 15 minutes at a time. (R. 706). The ALJ also noted, however, that Plaintiff continued working part-time after the alleged disability onset date, providing child care for her grandchildren and working at a concert venue, which the ALJ found inconsistent with Plaintiff's claims of disabling limitations. (R. 705). *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated."). And the ALJ did not equate Plaintiff's ability to engage in activities of daily living with an ability to work. She merely cited them as one factor weighing against the reliability of Plaintiff's statements. The Court finds no error in this assessment. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules.").

Viewing the record as a whole, the ALJ's decision to reject Plaintiff's subjective statements was not patently wrong, and the case need not be remanded for further consideration of this issue.

## CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the case is denied and the Commissioner's Motion for Summary Judgment [19] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: May 15, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge